IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| TRACEY TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 7427 |
| | ) | |
| COOK COUNTY, TOM DART, in his | ) | Hon. Virginia M. Kendall |
| individual capacity and official capacity, | ) | |
| DIRECTOR MILLER in his individual capacity | ) | |
| and his official capacity, COMMANDOR | ) | |
| FRANKLIN in his individual capacity and | ) | |
| official capacity, ARAMARK FOOD | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tracey Taylor, a pretrial detainee in the Cook County Department of Corrections, brought an action, pursuant to 42 U.S.C. § 1983, against Defendants Cook County and Thomas Dart alleging the Defendants violated his civil rights by denying him access to Islamic prayer services and by failing to serve Halal meat. The Defendants moved for summary judgment alleging that Taylor failed to exhaust his administrative remedies and has failed to raise a genuine issue of material fact as to whether they violated his constitutional rights. For the reasons set forth below, the Court grants the Defendants' motion and enters judgment in their favor.[1]

---

[1] Taylor's response brief and Rule 56.1 statement were untimely. However, Taylor filed an unopposed motion to file his response brief *instanter*. (Doc. 60.) That motion is granted and the Court considered Taylor's response brief and Rule 56.1 statement in reaching its decision.

## STATEMENT OF UNDISPUTED FACTS[2]

Taylor has been a pre-trial detainee at the Cook County Department of Corrections ("CCDOC") since August 13, 2011. (Def. 56.1 ¶ 1.)  After Taylor was booked and processed on August 13, 2011, he was housed in Division 10 at the Cook County Jail.  (Def. 56.1 ¶ 9.)  He remained in Division 10 until November 4, 2011.  (*Id.*)  Taylor has practiced Islam since 1993. (*Id.* at ¶ 6.) The core requirements of his faith are: 1) Al shahada, making an initial declaration of faith, which Taylor made in 1993 at the Menard Correctional Facility; 2) Salat, which means praying five times a day, following the example of the Prophet Muhammad; 3) charity, which Taylor describes as "giving of one-third to Muslim each year, where you supplement out your financials"; 4) observing Ramadan, during which Taylor must "fast for thirty days from sunup to sundown"; and 5) a pilgrimage to Mecca. (*Id.* at ¶ 7.) In 2011, Muslims observed Ramadan in August. (*Id.* at ¶ 8.) During Ramadan, Muslims are called upon to read the Qur'an, adhere to religious ethics, fast between sun up and sun down, and pray five times a day.  (*Id.* at ¶ 8.)

Taylor was not allowed to attend communal Islamic prayer services during Ramadan in 2011.  (*Id.* at ¶ 3.)  Indeed, he was not allowed to attend communal services for the first two months after he was detained in the Cook County Jail.  (*Id.* at ¶ 13.)  However, Taylor was allowed to keep and read a Qur'an in his cell at all times during this period.  (*Id.* at ¶ 10.)  He was permitted to speak freely about his faith.  (*Id.*)  He was also allowed to pray five times a day. (*Id.* at ¶ 11.)

---

[2] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to the Defendants' Statement of Uncontested Facts have been abbreviated to "Def. 56.1 ¶ or Ex. , p. ."; and citations to Taylor's Response to the Defendants' L.R. 56.1 Statement of Material Facts have been abbreviated to "Pl. 56.1 Resp. ¶ ."

During this period, communal Islamic prayer services were regularly held in Division 10. (*Id.* at ¶ 13.) These services usually occurred on Wednesdays and Fridays; however, they would generally happen whenever the volunteer imam[3] was available. (*Id.* at ¶ 12.) Neither the Cook County Jail nor the Sheriff's Department employed an individual to conduct the communal prayer services. (*Id.* at ¶ 24.) Rather, the services were performed by volunteers from the Muslim community. (*Id.* at ¶ 23.)

Between August 14, 2011 and November 4, 2011, communal Muslim prayer services did not occur at the Jail when there was a divisional lockdown, a staff shortage, or the volunteer imam did not appear. (*Id.* at ¶ 19.) A divisional lockdown is a security measure in which all unnecessary movement within the division is terminated for the purpose of conducting a thorough search of the entire facility to locate and identify any possible security breaches, along with a search for any illegal contraband in order to suppress the presence of weapons and illegal substances within the facility. (*Id.* at ¶ 20.) Activities, such as linen exchanges, recreation, and religious services, which require the movement of inmates within the division, are cancelled and rescheduled during lockdown for security and operational reasons. (*Id.* at ¶ 21.) When Division 10 is short-staffed, unnecessary detainee movements are cancelled due to security concerns. (*Id.* at ¶ 22.)

Another requirement of Islam is to observe certain dietary restrictions. These dietary restrictions implicate both what foods are allowed to be eaten and how the food must be prepared. Muslims are allowed to eat "Halal" foods. The Cook County Jail does not serve pre-trial detainees meat that satisfies Halal dietary restrictions. (*Id.* at ¶ 29.) To qualify as Halal,

---

[3] While the term imam can have a number of connotations, it generally refers to a Muslim prayer leader.

3

meat must be slaughtered in a certain way. (*Id.* at ¶ 30.) However, Muslims are not required to eat meat to comply with the tenets of their faith. (*Id.* at ¶ 37.) They are permitted to eat fruits, vegetables, and bread. (*Id.* at ¶ 39.) They are also permitted to eat vegan foods.[4] (*Id.* at ¶ 36.)

Taylor has never made any specific dietary request to the Cook County Jail or the Sheriff's Office. (*Id.* at ¶ 32.) The Jail requires that specific meal requests be submitted by pre-trial detainees for security purposes. (*Id.* at ¶ 33.) The presence of specific dietary meals may create a cause for inmate conflict. (*Id.*) Since Taylor never made a specific dietary request, he is served regular food trays. (*Id.* at ¶ 31.) He does not eat the meat provided on the food trays but he eats the other items such as the fruits, vegetables and bread. (*Id.* at ¶ 39.) He also eats peanut butter and jelly sandwiches and cereal. (*Id.* at ¶ 34.) There are also vegan food trays available to Taylor; however, he has never requested a vegan tray. (*Id.* at ¶ 36.) Taylor has never expressed that his meals fail to provide adequate nutrition. (*Id.* at ¶ 39.) Despite this, Taylor claims that the Defendants' failure to provide Halal meat has caused him to suffer emotional distress, spiritual distress, and physical distress in the form of depression and sleeplessness. (*Id.* at ¶ 51.)

The CCDOC has a "Detainee Grievance Procedure" that is available to all inmates. This procedure was available in 2011 and Taylor was aware of the procedure. (*Id.* at ¶ 41.) On August 20, 2011, Taylor claims that he filed emergency grievances for the right to attend Muslim services and to be served "accurate dietary Muslim meals" by handing grievances to a social worker. (*Id.* at ¶ 42.) Taylor never received a response to these grievances. (*Id.* at ¶ 44.) Taylor did not receive a control number for the grievances or maintain a copy of the grievances. (*Id.*) However, on the same day, Taylor also filed a grievance seeking to see an eye doctor. (*Id.* at ¶ 46.) He received a response to this grievance, which addressed his issues. (*Id.* at ¶ 47.) Taylor

---

[4] Vegan foods are foods that contain no animal products such as meat or dairy.

never inquired about the status of his grievances after submitting them to the social worker. (*Id.* at ¶ 45.) Nor did he file subsequent grievances concerning the denial of his free exercise of religion. (*Id.*)

Each grievance filed in the CCDOC must be entered into the CCDOC Master Grievance log book, which is kept in the ordinary course of business. (*Id.* at ¶ 49.) The Master Grievance log book does not contain records pertaining to Taylor's alleged August 20, 2011 religious grievances, nor any related to his dietary requests. (*Id.* at ¶ 50.) The CCDOC detainee grievance procedure requires an inmate to properly appeal his grievance before filing a lawsuit. (*Id.* at ¶ 48.) Taylor did not attempt to appeal his grievances. (*Id.* at ¶¶ 44-45.) Taylor has never personally informed Defendant Thomas Dart about his complaints or grievances. (*Id.* at ¶ 52.) Taylor did not send Dart any correspondence nor does he have any evidence showing Dart was aware of his complaints. (*Id.* at ¶ 53.)

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P 56(c). When determining if a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately

rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.")(citing *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983)). Rebuttals based purely on "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001) (citing *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir.1993)).

## DISCUSSION

### I.     Taylor Failed to Exhaust his Administrative Remedies

The Prison Litigation Reform Act of 1995 provides in relevant part that "no action shall be brought with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress passed this provision in an attempt to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks "to affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo,* 548 U.S. 81, 93 (2006) (internal quotations and citations omitted). If a prisoner fails to exhaust his administrative remedies before filing suit, the district court must dismiss the complaint without reaching the merits. *See Perez v. Wisconsin Department of Corrections,* 182 F.3d 532, 535-36 (7th Cir. 1999).

Prisoners in the Illinois penal system must generally submit their grievances through five levels of review. Ill. Admin. Code tit. 20, § 504.810(a); *see also Dole v. Chandler,* 438 F.3d 804, 806-07 (7th Cir. 2006). First, a prisoner submits a grievance to a counselor. *Id.* If this results in an unsatisfactory result, the prisoner may then submit a formal grievance to the prison's grievance officer. *Id.* The grievance officer reviews the grievance and makes a recommendation to the warden. Ill. Admin. Code tit. 20, § 504.830(d); *Dole,* 438 F.3d at 807. The warden then renders a decision on the grievance. If the prisoner is still not satisfied, he may file an appeal to the Director, which will be reviewed by an Administrative Review Board. Ill. Admin. Code tit. 20, § 504.850(a); *Dole,* 438 F.3d at 807. The ARB makes a recommendation to the Director. The Director then issues the final decision for the department. A prisoner does not have exhaust his administrative remedies unless he goes through each of these steps. *See Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004); *Pozo v. McCaughtry,* 286 F.3d 1022, 1023-24 (7th Cir. 2002).

However, a prisoner is only required to utilize these steps to the extent they are available. *See Woodford,* 548 U.S. at 102; *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2007). The "availability" of a remedy is a matter of what, in reality, is open for a prisoner to pursue. *See Kaba,* 458 F.3d at 684. The appropriate analysis focuses on whether the plaintiff did all he could to avail himself of the administrative process. *See Dole,* 438 F.3d at 809. If he followed the prescribed steps and could do nothing more, then available remedies were exhausted. *Id.* at 811. "Prison officials may not take unfair advantage of the exhaustion requirement, [] and a remedy becomes unavailable if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Id.* at 809.

There are several ways in which an administrative process might not be available to a

prisoner. For example, if grievances are to be filed on a particular form but the form is never provided to the prisoner, then there is no "available" remedy, despite its hypothetical possibility. *See Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004). Similarly, threatening a prisoner with violence for attempting to use an administrative process makes that process unavailable. *See Hemphill v. New York,* 380 F.3d 680, 688 (2d Cir. 2004). Finally, administrative remedies can be rendered unavailable by a prison official's failure to respond to inmate grievances. *See Brengettcy v. Horton,* 423 F.3d 674, 682 (7th Cir. 2005); *Lewis v. Washington,* 300 F.3d 829, 835 (7th Cir. 2002).

In this case, the only evidence that Taylor offers in support of his assertion that he exhausted his administrative remedies is his deposition testimony in which he stated that he handed three grievances to a social worker on August 20, 2011. Simply handing a grievance to a social worker does not exhaust one's administrative remedies under the Illinois scheme. *See, e.g., Johnson,* 362 F.3d at 397 ("In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system.") (internal citations omitted). Taylor contends that the administrative review process was unavailable to him because he never received a reply to the grievances he submitted. However, he concedes that he failed to make any attempt to follow up on the status of his grievances. Simply submitting a grievance and not receiving a response is insufficient to establish that the grievance process is unavailable. *See, e.g., Logan v. Emerson,* No. 10 C 4418, 2012 WL 3292829, at *5 (N.D. Ill. Aug. 9, 2012) (finding prisoner failed to exhaust his administrative remedies where the prisoner "provided no evidence...that he followed up, sought instruction as to how to exhaust a lost grievance, or pursued the issue in any way"). Rather, an inmate must attempt to follow up on the status of their grievance. Only after the inmate follows up with the prison and still receives no response

8

can the grievance process be deemed unavailable. *See, e.g., Logan*, 2012 WL 3292829, at *5; *Wallace v. Buncich,* No. 02 C 450, 2006 U.S. Dist. LEXIS 39519, at *16 (N.D. Ind. Mar. 31, 2006) (finding that prisoner failed to exhaust his administrative remedies when he failed to "follow[] up on his grievance by asking why he had not heard from jail officials"); *Nesbitt v. Villanueva,* No. 09 C 5299, 2010 WL 4932423, at *3-4 (N.D. Ill. Nov. 29, 2010) (same).

This is why Taylor's reliance on *Brengettcy* is misplaced. There, the plaintiff learned that his grievance was missing, lost or destroyed and he attempted to determine what steps he needed to take to complete the grievance process. *See* 423 F.3d at 678-79. That is not the case here. Here, Taylor filed his grievance and then stuck his head in the sand until he decided to file a complaint in this Court. Plaintiff's lethargy is highlighted by the fact that he received a response to a separate grievance he filed on the same day he filed the grievances at issue here. Despite this, he made no effort to learn the status of his other grievances. It is incumbent upon a pre-trial detainee to exercise a degree of diligence in pursuing his grievance with the Sheriff's Department before filing a claim in federal court. The administrative review process cannot be determined to be unavailable under this scenario. Accordingly, summary judgment is granted in favor of Defendants Cook County and Sheriff Dart because Taylor failed to exhaust his administrative remedies.

## II. Taylor Failed to Present Any Evidence Demonstrating Cook County or Sheriff Dart Could be Liable for Denying Him Access to Communal Islamic Prayer Services

In addition to the procedural bar, summary judgment is warranted in this case because Taylor has failed to establish that either Cook County or Sheriff Dart could be liable for a civil rights violation. The first civil rights violation alleged by Taylor is that he was denied a reasonable opportunity to exercise his religious freedom because he was prevented from

attending communal Islamic prayer services for the first two months he was detained in the Cook County Jail. Lawful imprisonment deprives convicted prisoners of many rights; however, inmates still retain limited constitutional protections, including the First Amendment right to the free exercise of religion. *See Tarpley v. Allen County, Indiana,* 312 F.3d 895, 898 (7th Cir. 2002) (citing *Cruz v. Beto,* 405 U.S. 319, 322 n.2 (1972)). Prison officials may not interfere with a prisoner's free exercise of religion unless the asserted regulation is justified by a legitimate penal interest. *See Turner v. Safley,* 482 U.S. 78 (1987); *Williams v. Lane,* 851 F.2d 867 (7th Cir. 1988). If they do, they may be held liable pursuant to 42 U.S.C. § 1983.

However, Section 1983 creates a cause of action based on personal liability and predicated on fault. A defendant is not liable under § 1983 unless they actually "caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park,* 430 F.3d 805, 810 (7th Cir. 2005) (citations omitted). The doctrine of *respondeat superior* does not apply to actions filed under § 1983. *See, e.g., Kinslow v. Pullara,* 538 F.3d 687, 692 (7th Cir. 2008). Actions brought against governmental employees in their official capacities are actually claims against the governmental entity for which they work. *See Kentucky v. Graham,* 473 U.S. 159, 167 (1985). Thus, the only way that either Cook County or Sheriff Dart (in his official capacity) may be held liable for the unconstitutional acts of their employees is if those acts were committed as part of an official custom or policy. *See Monell v. Dep't of Soc. Servs.,* 436 658, 690 (1978); *Grieveson v. Anderson,* 538 F.3d 763, 771 (7th Cir. 2008).[5]

---

[5] Both parties also discuss in their briefs whether Sheriff Dart may be held personally liable for any alleged constitutional deprivations. However, this Court already dismissed any claims against Dart in his personal capacity. (*See* Doc. 8 [stating that "Plaintiff Taylor may proceed with his *official capacity claim, based on the alleged discriminatory policy at Cook County Jail,* against Cook County and Sheriff Dart" and dismissing the other defendants].) Therefore, the only claims still at issue in this lawsuit are Taylor's official capacity claims

A plaintiff can demonstrate an official policy or custom by showing: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) the constitutional injury was caused by a person with final policymaking authority. *See Estate v. Sims, County of Bureau,* 506 F.3d 509, 514 (7th Cir. 2007). In order to impute knowledge to policymakers of a widespread practice, a plaintiff must show a pattern of constitutional violations; a single act of misconduct does not suffice. *See Jackson v. Marion County,* 66 F. 3d 151, 152 (7th Cir. 1995).

There is no evidence in this case that Taylor's denial of access to communal Islamic prayer services was part of an official custom or policy. Indeed, the Defendants presented evidence that Taylor was housed in Division 10 of the Cook County Jail from August 13, 2011 through November 4, 2011. During this time Muslim prayer services were regularly held in Division 10. These services were generally held on Wednesdays and Fridays. The only reason that prayer services were not held during this period was the result of either a divisional lockdown, a staff shortage, or that the volunteer Muslim imam did not appear. Cancelling Islamic prayer services for these reasons does not amount to a constitutional violation because they are all legitimate penological interests. *See Turner,* 482 U.S. at 84-85 (holding that a regulation that infringes on an inmate's free exercise of religion will survive a constitutional challenge provided that prison administrators can establish that the regulation is a rational means of furthering a legitimate penological interest); *see also, e.g., McRoy v. Sheehan,* 366 F. Supp. 3d 662, 668-670 (N.D. Ill. 2005), *aff'd* 205 Fed. Appx. 462 (7th Cir. 2006) (holding that regulations requiring the cancellation of Muslim services during lockdowns, staff shortages, and when the

---

against Cook County and Sheriff Dart for the alleged discriminatory policies at the Cook County Jail.

volunteer imam fails to appear are all rational means of furthering a legitimate penological interest under *Turner*); *Walker v. Dart,* No. 09 C 1752, 2010 WL 3307079, at *10-11(N.D. Ill. Aug. 19, 2010) (same).

Moreover, there is no evidence that Sheriff Dart was aware that Taylor could not access the Muslim services for two months. Taylor admits that: (1) he never personally informed Sheriff Dart about his complaints; (2) he never had any personal involvement with Sheriff Dart; and (3) he has never spoken or communicated with Sheriff Dart in any way. (*See* Pl. 56.1 Resp. ¶¶ 52-53.) Accordingly, there is no evidence that Taylor's alleged constitutional injury was caused by a person with final policymaking authority.

Taylor concedes in his response that he has no issue with the Cook County Jail's generally policy for the provision of Islamic services; rather, his complaint is that he was denied access to those services for two months. However, it is indisputable that neither Cook County or Sheriff Dart personally prevented Taylor from accessing those services. While a claim may lie against the unnamed individuals who allegedly prevented Taylor from accessing the prayer services, Cook County and Sheriff Dart (in his official capacity) cannot be held liable under this theory because the doctrine of *respondeat superior* does not apply to § 1983 actions. *See, e.g., Milestone v. City of Monroe,* 665 F.3d 774, 780 (7th Cir. 2012) ("There is no respondeat superior liability under 42 U.S.C.S. § 1983; the Supreme Court distinguishes acts of the municipality from acts of employees of the municipality.") (internal quotations and citations omitted). Thus, Taylor's failure to articulate a constitutionally offensive policy or practice is fatal to this claim.

Therefore, Cook County and Sheriff Dart are granted summary judgment on Taylor's opportunity to exercise religious freedom claim.[6]

### III. Cook County and Sheriff Dart Are Entitled to Summary Judgment on Taylor's Religious Diet Claim

Taylor's Complaint also alleges that the Cook County Jail's decision to not serve Halal meats violates his constitutional rights under § 1983. This claim turns on whether the decision to not serve Halal meats violates either the Religious Land Use and Institutionalized Persons Act ("RLUIPA") or the First Amendment.[7] Taylor also argues that the failure to serve Halal meat violates his rights under the equal protection clause of the Fifth Amendment.

#### A. RLUIPA and First Amendment Claims

RLUIPA provides that the institutions receiving federal financial assistance may not "impose a substantial burden on the religious exercise" of an institutionalized person unless it is the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(2). Similarly, the First Amendment entitles a prisoner to practice his or her religion so long as the practice does not unduly burden the penal institution. *Richards v. White,* 957 F.2d 471, 474 (7th Cir. 1992) (citing *Hunafa v. Murphy,* 907 F.2d 46, 47 (7th Cir. 1990)). However, a prisoner's right to exercise his or her religion is balanced against the legitimate goals of the

---

[6] The Court doubts that Taylor's inability to access communal Muslim prayer services for two months amounts to a Constitutional violation in light of the fact that Taylor concedes that: (1) he was allowed to keep and read a Qur'an in his cell; (2) he was always permitted to speak freely with others about his Muslim faith; and (3) he was always free to pray five times a day. *See, e.g., Grant v. DeTella,* (N.D. Ill. Oct. 5, 1999) (citing *Burton v. Nelson* (N.D. Ill. Feb. 3, 1998)) (finding no constitutional violation where plaintiff was entitled to practice his religion in other manners during the time he was not able to attend communal services). However, the Court does not need to reach a decision on this question as there is no defendant in this case that this claim could be asserted against.

[7] The Defendants have conceded that there is effectively a policy against serving Halal meat. Thus, the only question is whether this policy violates the Constitution or RLUIPA.

institution. *See Hadi v. Horn,* 830 F.2d 779, 783 (7th Cir. 1987) (internal citations omitted). To constitute a violation of the First Amendment, the government must place a substantial burden on a prisoner's observation of a central religious belief or practice. *See Wisconsin v. Yoder,* 406 U.S. 205, 220 (1972). Therefore, to establish a potential violation of either RLUIPA or the First Amendment, Taylor must show that a substantial burden was placed upon the exercise of his religious beliefs.

In determining when government conduct is substantially burdensome, a court should consider whether the conduct "put[s] substantial pressure on an adherent to modify his behavior and violate his beliefs." *Koger v. Bryan,* 523 F.3d 789, 799 (7th Cir. 2008) (internal citations and quotations omitted). In the context of a religion's dietary requirements, a "prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition." *Nelson v. Miller,* 570 F.3d 868, 879 (7th Cir. 2009); *see also Hunafa,* 907 F.2d at 47 (recognizing that a prisoner can bring a free exercise claim where he is "put to an improper choice between adequate nutrition and observance of the tenets of his faith.").

Here, Taylor failed to establish that the denial of Halal meat is a substantial burden placed upon the exercise of his religious beliefs because the Defendants have not forced him to choose between his religious practice and adequate nutrition. While Taylor asserts he may only eat Halal meat to be in accordance with his faith, he concedes that Islam does not require him to eat meat. He also concedes that he is able to consume a sufficiently nutritious diet of foods, such as peanut butter and jelly, cereal, fruits, vegetables and bread, that do not violate his faith. He also concedes that vegan food trays are available to him, are sufficiently nutritious, and consumption of which would not violate his faith. RLUIPA and the First Amendment do not

provide an inmate with the ability to practice his religion in any manner he wishes, they only guarantee that substantial burdens may not be imposed on his exercise of religion absent a compelling penological interest. Since Defendants have done nothing to prevent Taylor from practicing his religious beliefs, they have not imposed a substantial burden on Taylor's exercise of religion. *See, e.g., Perez v. Frank,* No. 04 C 1062, 2008 WL 859716, at *6 (E.D. Wis. Mar. 28, 2008) (finding that the failure to provide Halal meat is not a substantial burden on plaintiff's practice of his Muslim faith where the prison provides a diet that comports with Halal dietary restrictions); *Shaheed Allah v. Jordan-Luster,* No. 04-1083, 2007 WL 2582199, at *8-10 (C.D. Ill. Aug. 3, 2007) (same); *Hearn v. Kennell,* No. 07 C 1235, 2009 WL 3460455, at *5 (C.D. Ill. Oct. 22, 2009) (finding that Muslim inmates' dietary religious practices were not unduly burdened when inmates were given the option of choosing vegan or lacto-ovo meals).

### B.     Equal Protection Claim

Taylor's Complaint also asserted that the failure to serve Halal meat violates the equal protection clause because the Cook County Jail serves kosher meat for Jewish inmates. In order for a plaintiff to prevail on an equal protection claim, he must show intentional discrimination resulting from the plaintiff's membership in a particular class. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676-77 (2009); *Dunn v. Washington Cnty. Hosp.,* 429 F.3d 689, 692 (7th Cir. 2006); *Heubschen v. Department of Health and Social Services,* 716 F.2d 1167, 1171 (7th Cir. 1983). The plaintiff must also show that the deprivation was based on an unjustifiable standard such as race, religion, or other arbitrary classification. *Vukadinovich v. Bartels,* 853 F.2d 1387, 1392 (7th Cir. 1988). Simply receiving different or unfair treatment is not enough to raise an equal protection violation. *Heubschen,* 716 F.2d at 1171.

In this case, Taylor's equal protection claim fails because he did not offer any evidence that the Cook County Jail serves kosher meals. Even if he had, he still failed to demonstrate that the prison's decision to serve kosher meat but not Halal meat was motivated by intentional or purposeful discrimination. *See Hearn v. Kennell,* 433 Fed. Appx. 483, 484 (7th Cir. 2011) (holding that "summary judgment was proper because [plaintiff] has put forth no evidence that the prison's decision to serve kosher meat but not halal meat was motivated by intentional or purposeful discrimination"); *see also Patel v. Bureau of Prisons,* 515 F.3d 807, 816 (8th Cir. 2008) (holding that summary judgment on equal protection claim was proper because plaintiff failed to provide sufficient evidence proving that the Bureau of Prisons' decision to serve kosher meat, but not Halal meat, was motivated by purposeful or intentional discrimination). Therefore, Cook County and Sheriff Dart are granted summary judgment on Taylor's religious diet claim.

## III. Taylor's Claim that He was Prevented from Fasting During Ramadan Is Waived

In response to the Defendants' motion for summary judgment, Taylor also argues that the Defendants violated his civil rights by not allowing him to observe the obligatory fast during Ramadan. Specifically, he argues that the Defendants placed a substantial burden on his free exercise of religion because they forced him to eat meals and take medication while the sun was up. However, this is the first time that Taylor has raised this claim. It is not alleged in his Complaint. Therefore, this claim is waived. *See Berry v. Chicago Transit Authority,* 618 F.3d 688, 693 (7th Cir. 2010) (holding that plaintiff forfeited retaliation claims raised for the first time in her response to defendant's summary judgment motion); *Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir. 2002) (holding that "a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *Trade Fin. Partners, LLC v. AAR Corp.,* 573 F.3d 401, 412 (7th Cir. 2009) ("the district court did not err by concluding that [the

16

plaintiff] waived this alternative basis for its breach [of contract] claims by raising it for the first time in its sur-reply during summary judgment proceedings") (citing *Grayson,* 308 F.3d at 817); *see also, e.g., Crawford Supply Grp., Inc. v. Bank of Am., N.A.,* No. 09 C 2513, 2011 WL 3704262, at *4, n.4 (N.D. Ill. Aug. 23, 2011) ("The Seventh Circuit has explained that a plaintiff waives alternative bases for claims if they are not raised for the first time until briefing during summary judgment proceedings.") (citing *Trade Fin. Partners,* 573 F.3d at 412).

## CONCLUSION

For the reasons stated set forth above, summary judgment is granted in favor of Defendants Cook County and Sheriff Thomas Dart.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: May 23, 2013